# LAW OFFICES OF MICHELE A. BAPTISTE
## 1225 FRANKLIN AVENUE, SUITE 325
## GARDEN CITY, NEW YORK 11530
## (516)512-8934

_____

October 8, 2021

<u>VIA ECF</u>
Honorable Gary R. Brown
United States District Judge
United States District Court Eastern District of New York
100 Federal Plaza
P.O. Box 9014
Central Islip, New York 11722

       Re: <u>Dumornay v. Bd. of Educ. of Brentwood Union Free School District, et al.</u>
       Docket No.: 21-cv-4429 (GRB)(JMW)

Dear Judge Brown:

       This office represents the Plaintiff in the above-referenced matter. First, I would like to extend my apologies to this court for my late response to Docket Entry #8 as I was out of the office on a personal leave on August 18, 2021 and did not return until the middle of September. I am writing in response to a letter submitted by Counsel to the Defendants requesting a pre-motion to dismiss and/or conference to discuss a motion to dismiss the Plaintiff's complaint. The Plaintiff opposes each and every allegation for dismissal present in the letter dated August 18, 2021.

       The Plaintiff Gary DuMornay, ("DuMornay") a qualified African American Assistant Principal was a resident of the Defendant Brentwood Union Free School District ("Brentwood UFSD") in September 2019. At issue in this lawsuit is not the leave replacement appointment of Defendants Vincent Autera ("Autera") and Wayne Loper ("Loper") but the probationary appointments in September 2019 which lead to a tenured appointment in the school district. Leave replacement positions in public schools in New York State are temporary civil service appointments with contractual termination dates. Here, the Defendants promoted or accepted promotions as probationary public school administrators/supervisors without a posting and formal competitive selection process. Such a formal competitive selection process is required by New York State Civil Service Law Article 3, Title A, §35(b) that defines supervisors in New York schools as unclassified civil servants. Pursuant to the Constitution of the State of New York Article 5, §6, all civil service appointments must be made according to a competitive examination of fitness as far as practicable. Prior to September 2019, the Brentwood UFSD was required to hold a formal competitive selection process and failed to do so.

Both Defendants Autera and Loper were initially hired to fill leave replacement positions. The posting that resulted in the hiring did not indicate that this position had the possibility of leading to a permanent tenured position or that applicants would be given priority for future permanent positions. Mr. DuMornay did not apply for the probationary positions in his hometown because the positions were not advertised.  In fact, Brentwood UFSD did not even reach out to the pool of 6 African American candidates, who previously applied for the administrative positions.  The Brentwood UFSD school district frequently uses the practice of hiring non-minority candidates as temporary employees and then placing them into permanent positions to avoid its own internal hiring policy of giving priority to residents of the predominately African-American and Latino community.  This practice disproportionately impacts African-American and Latinos, such as Mr. DuMornay because he was also a resident of the Brentwood UFSD at the time of the probationary appointment of Defendants Autera and Loper in September 2019.  The Plaintiff, to the contrary has a legal basis, standing, and right to file a claim of discrimination and other claims (such as due process and equal protections) when an employment opportunity was not advertised/posted and when he did not know about a position until it was being appointed, Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004).

The Defendants argue that Plaintiff's filing in the New York State Division of Human Rights bars this suit.  Plaintiff submitted a NYSDHR complaint which was filed duly with the EEOC.  However, the New York State Division of Human Rights only had jurisdiction to decide complaints as it related to the New York State Human Rights Law.  See New York State Human Rights Law §296.   The plaintiff's federal discrimination claims and any non-discrimination claims were not within the jurisdiction of the state agency. Title VII of the Civil Rights Act of 1964 makes unlawful employment discrimination on the basis of race, color, religion, sex, or national origin.  The comparable administrative agency created to handle complaints of discrimination under the title is the Equal Employment Opportunity Commission (EEOC). Accordingly, based on the findings of this court, Plaintiff can amend its complaint to include only the federal claims and non-state discrimination causes of action.

The Plaintiff's cause of action pursuant to N.Y. Civil Service Law Article 5, §6 are valid because the Principal and Assistant Principal positions are civil service positions as a matter of law because they are supervisory positions in New York public schools, see New York State Civil Service Law Article 3, Title A, §35(b).  The Constitution of the State of New York renders all civil service appointments to be competitive as far as practicable and according to an examination of fitness. Article 5 §6 makes non-competitive appointments lawful only when competition and examinations of fitness are impracticable, such as untimely separations due to resignations, medical emergencies/hospitalizations, and deaths where temporary appointments are instantly necessary making competition and examinations of fitness for these unforeseen circumstances temporarily impracticable. No position defined as unclassified or classified civil service can be classified or categorized as "not competitive civil service" as a matter of law relevant to this proceeding.

The Plaintiff's claims are timely because Autera and Loper were appointed to be probationary secondary principal and assistant principal, respectively, in 2019, not 2018. While

2

more than one-year has passed, the Plaintiff maintains that the statute of limitations were tolled due to the Executive orders of former Governor Cuomo beginning in March 2020. Such a tolling of the statute was done due to the global COVID-19 pandemic. Considering the tolling period from March 2020 to November 2020, the governor's orders generally tolled statutes of limitations for approximately eight (8) months, exactly 228 days. Here, the Plaintiff filed his Summons with Notice on March 17, 2021, only six (6) months after a presumed one-year deadline of September 19, 2020 according to New York Education Law §3813(2-b), and before the May 5, 2021 deadline when counting 228 days of tolling. The Appellate Division, Second Department has specifically stated that, "Executive Order (Cuomo) No. 202.8 (9 NYCRR 8.202.8), issued on March 20, 2020, in response to the COVID-19 pandemic . . . generally tolled limitations periods" (Matter of Echevarria v Board of Elections in the City of NY, 183 AD3d 857, 858 [2d Dept 2020]). Other Courts have deduced the same, that the Executive Orders tolled statutes of limitations and did not suspend them. See In re Application of 701 River St. Assocs., 2021 N.Y. Slip Op. 21116 (N.Y. Sup. Ct. 2021) and Foy v. State, 2021 N.Y. Slip Op. 21037 (N.Y. Ct. Cl. 2021).

      The Plaintiff initiated this instant proceeding by filing a Summons with Notice on March 17, 2021 in the Suffolk County Supreme Court. He served the Summons with Notice upon the Defendants on or before July 17, 2021. The Defendants filed a demand for a complaint on July 14, 2021. In response, Plaintiff filed his complaint in Suffolk County Supreme Court on August 3, 2021. Three days later, the Defendants filed a Notice of Removal to the Eastern District of New York. The state-filed complaint and state summons could not be served upon all the Defendants prior to the removal. It was only recently discovered that the state summons and not the federal summons was in process of being served upon the defendants. The proper federal issued summons was requested recently and the process of re-serving the Defendants has started and will be completed shortly.

      The Plaintiff maintains that the Defendants have used improper hiring practices to deny qualified African-American candidates, like Mr. DuMornay, from obtaining positions in the school district as administrators by hiring them into temporary positions and then appointing them to probationary positions without a bona fide competitive examination of fitness as far as practicable. The evidence will show that this practice overwhelming disadvantages African Americans and/or Blacks. The Plaintiff further maintains that this practice is prevalent in Brentwood Union Free School District and is embedded in labor contract language that was created and has been kept intact since the 1960's. Both the Brentwood Teachers Association and Brentwood Principals and Supervisors Organization contracts contain language that gives teachers and administrators a 25% of salary bonus for submitting retirement papers 1.5 years before the effective date of retirement. As a result of this, the Brentwood Union Free School District can effectively plan for the replacement of White retiring teachers and administrators with White substitute/leave replacement teachers that it later automatically appoints to the known vacancies. The 2nd Circuit Court of Appeals has consistently affirmed the "elusive" nature of intentional discrimination and that employers may "easily conceal their motivations." Plaintiff maintains that this case involves such a hidden scheme as it intentionally reduced the number of Black administrators, increased the number of White administrators, and blocked Blacks such as

3

the Plaintiff from employment opportunity for two (2) probationary administrative positions/contracts valued at over $300,000 in annual salaries and benefits.

Section 1985(3) proscribes conspiracies to "deprive[] . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). Section 1986 obligates a person to thwart a known conspiracy under Section 1985 through the exercise of "reasonable diligence." See 42 U.S.C. § 1986. "[T]rangressions of § 1986 by definition depend on a preexisting violation of § 1985." Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994). The Plaintiff maintains that the Defendant superintendent and board trustees violated sections 1985 (3), 1986 and 1982 (although not raised in the Defendant's papers[1]) when they recommended and agreed or voted to appoint Loper and Autera to their respective probationary positions. The Defendants had full knowledge prior to making those appointments that there was no competitive selection process and they moved forward with the appointments nonetheless. Each actor had the opportunity and duty to oppose a violation of the Constitution of the State of New York, Civil Rights Law, Human Rights Law, and Federal Civil Rights Law and did not make any such opposition. The result of this action was that they deprived African American or Blacks, such as Mr. Durmonay, from the opportunity to apply for and compete for the probationary administrative positions. These appointments without a selection process are a clear aberration from the District's hiring of administrative appointments, and all of the Defendants, except Mr. Loper, are familiar with the longstanding pattern (over 15 years) of posting and interviewing for probationary administrative positions.

The right to equal employment opportunity became an established tenet of the United States of America with the establishment of the Equal Employment Opportunity Commission and the passage of and subsequent amendments to the Civil Rights Act of 1964. New York Human Rights Law §291 also declares equal employment opportunity to be a civil right. As such, the right to equal employment opportunity without race and color discrimination is an individual substantive right that the Plaintiff was denied on September 19, 2019. The Equal Protections clauses of the New York Civil Rights Law 40-c, the Constitution of the State of New York Article 1, Section 11 and the Fourteenth Amendment require that Defendants protect the laws, regulations and policies equally, including for the Plaintiff. The Defendants have failed to protect school board policy 9240 and other policies, as well as Suffolk County Human Rights Law and New York State Human Rights and Federal Civil Rights.

Moreover, the Plaintiff's §1981 claims are viable because the Defendant District and agents acted to continue the District-named practice of 'ripening' which is the transition of temporary employment contracts into probationary contracts without posting and without

---

[1] The §1982 claims are relevant to this proceeding because probationary (tenure track) administrative positions lead to tenure as a matter of law, with tenure providing due process property rights to New York educators. Under section 3020-a of the New York State Education law, tenured educators can not be disciplined unless they are provided with certain due process. Consequently, Plaintiff was denied the opportunity to obtain this probationary appointment and subsequently receive tenure.

4

interviews (a competitive process). The Plaintiff has also identified a process that empowers the policy, with internal/system knowledge of retirement vacancies that lead to the appointment of lesser qualified temporary Whites over Blacks with probationary and tenured administrative experience. These two policies in concert relegate highly qualified and experienced African Americans or Blacks to temporary positions with the hope of attaining a permanent position. The District to date has not hired a single African American/Black administrator by "ripening" a temporary contract, evidence that this scheme is biased against the employment of Blacks. Making it a §1981 violation for which §1983 remedies may be pursued.

In general, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). However, an employment discrimination complaint "must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002). The Title VII claims should not be dismissed because the complaint provides a short and plain statement of the claim under which relief can be granted.

The Defendants treated White employees (Defendants Autera and Loper) better than the Plaintiff, an African American. Such actions meet the federal definition of discrimination and disparate treatment. Here, the Brentwood UFSD's hiring practice of not advertising permanent positions and then considering internal candidates from temporary positions has yielded zero (0) African Americans/Blacks being hired. Both admitted practices of Brentwood UFSD mathematically benefit Whites and are exclusionary although inclusive alternatives exist such as enforcing school board policy 9240. The Defendants acted and conspired to violate school board policy 9240 that gives residents, like the Plaintiff, an advantage in hiring and that spells out, quite clearly, the purpose of hiring to find the best and most qualified candidates for the job. Because a policy has been identified that statistically has led to the hiring of no Blacks, it is arguably a hiring practice that discriminates against Blacks. All of the Defendant school board members and Superintendent named in the complaint acted to recommend the appointments and voted to approve the appointments. Defendants Loper and Autera accepted the disputed appointments by signing an employment/salary agreement contract. Such actions are relevant to the appointments as any one of those acts could have disabled the appointments.

For all of the stated reasons, the Plaintiff respectfully requests that Defendant's motion to dismiss be denied and that briefing scheduled be created in order to provide additional evidence and/or supporting arguments. Alternatively, Plaintiff maintains that the reasons set forth herein establish sufficient grounds to dismiss Defendant's motion.

Very truly yours,

Michele A. Baptiste, ESQ
1225 Franklin Avenue, Suite 325
Garden City, New York 11530
(516) 512-8934

5

Cc: Caroline B. Lineen, Esq., Silverman & Associates (via ECF)